IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GARY LLOYD MILLER, § | |
| TDCJ-CID NO. 1492685, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. H-09-1305 |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal § | |
| Justice, Correctional § | |
| Institutions Division, § | |
| § | |
| Respondent. § | |

**MEMORANDUM OPINION AND ORDER**

Gary Lloyd Miller, proceeding pro se, has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254 challenging his conviction for aggravated assault (Docket Entry No. 1). Pending before the court is Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 20). For the reasons stated below, Quarterman's motion for summary judgment will be granted, and Miller's petition for a writ of habeas corpus will be denied.

**I. Background**

Petitioner, Gary Lloyd Miller, was convicted of aggravated assault on February 9, 2006, in Fort Bend County, Texas, and was

subsequently sentenced to forty years' confinement.[1]  The facts of the case are summarized by the Court of Appeals for the Fourteenth District of Texas.

> Appellant and Belinda Musgrave met in 2003 and eventually married.  Their relationship was often strained and volatile.  On Tuesday, December 15, 2004, Musgrave's employer informed her that she would not receive a Christmas bonus that year.  When Musgrave told appellant, he became extremely upset.  Appellant believed that Musgrave would not get a bonus because her co-workers did not like him and were trying to hurt him through Musgrave.  He yelled and screamed at Musgrave in the car on the way home and continued his tirade until Tuesday morning at Musgrave's home.  During this time he would go to and from the house regularly.  At one point, he pulled out Musgrave's handgun, which she kept under their mattress, and said that he needed to kill himself or someone else because of how he felt.  He also pointed the gun at Musgrave's head, from a distance of approximately thirty inches, and threatened to kill her if he believed she was part of the conspiracy.  Musgrave's adult daughter, who lived with appellant and Musgrave, heard portions of the fight, including appellant checking the handgun to make sure it was loaded and threatening to kill himself or Musgrave.

Miller v. Texas, No. 14-06-00224-CR, 2007 WL 925718, at *1 (Tex. App. -- Houston [14th Dist.] March 29, 2007, pet. dism'd) (not designated for publication).

In his appeal Miller initially raised two issues:  factual sufficiency and that he was denied a fair trial because the prosecutor initially read the wrong count of the indictment.[2]  In a supplemental brief, Miller also raised the argument that the evidence was insufficient to prove a threat of imminent bodily

---

[1] IV RR 115; VI RR 35 (Reporter's Record, out of seven volumes).

[2] Brief for Appellant at 3, Miller v. Texas, No. 14-06-00224-CR, 2007 WL 925718 (Tex. App. -- Houston [14th Dist.] March 29, 2007, pet. dism'd) (not designated for publication).

harm.³  Miller's conviction and sentence were upheld on appeal and his petition for discretionary review was refused.⁴  Miller then filed a timely petition for state habeas.  In his first state habeas petition Miller alleged that he was denied a fair because the prosecutor read the wrong count of the indictment and that the evidence was insufficient to prove a threat of imminent bodily harm.⁵  The Court of Criminal Appeals dismissed Miller's first habeas petition without a written order.⁶  Miller then filed a second state habeas petition raising several new grounds based on ineffective assistance of counsel.⁷  This petition was rejected by the Texas Court of Criminal Appeals as successive.⁸

---

³Supplemental Brief for Appellant at 10, <u>Miller v. Texas</u>, No. 14-06-00224-CR, 2007 WL 925718 (Tex. App. -- Houston [14th Dist.] March 29, 2007, pet. dism'd).  Although Miller's retained attorney continued to title the complaint "factual sufficiency," it appears to be an argument based on legal sufficiency.

⁴The court of appeals initially affirmed Miller's conviction in an opinion that dealt only with factual sufficiency and the lack of a fair trial due to prosecutorial error.  <u>Miller v. Texas</u>, No. 14-06-00224-CR, 2007 WL 925718 *1 (Tex. App. -- Houston [14th Dist.] March 29, 2007).  The court later issued a Supplemental Opinion that dealt with the legal sufficiency issues raised by Miller's new brief.  <u>Miller v. Texas</u>, No. 14-06-00224-CR, 2007 WL 4340560 (Tex. App. -- Houston [14th Dist.] Dec. 13, 2007).  This Supplemental Opinion was ordered to be withdrawn as having been filed too close to the time of Miller's Petition for Discretionary Review, and the first opinion was reinstated.  <u>Miller v. Texas</u>, 267 S.W.3d 32, 33 (Tex. Crim. App. 2008).

⁵<u>Ex parte Miller</u>, WR-70,568-01, pp. 24-25.

⁶<u>Id.</u>, at inside cover.

⁷<u>Ex parte Miller</u>, WR-70,568-02, pp. 58-63.

⁸<u>Ex parte Miller</u>, WR-70,568-02, at inside cover.

In his federal petition Miller raises the following grounds for habeas relief:

(1) Denial of a fair trial because the prosecutor read the wrong count of the indictment.

(2) Insufficient evidence to prove Miller threatened Belinda Musgrave with imminent bodily injury because the threats were vague and conditional.

(3) Insufficient evidence to prove that a threat was made because there was no corroborating eyewitness.

(4) Ineffective assistance of trial counsel due to:

   (a) failure to object to entry into evidence of firearm other than the actual firearm Miller was accused of using;

   (b) lack of presentation of evidence on defendant's behalf;

   (c) failure to object to witness not listed on state's witness list;

   (d) failure to investigate criminal history of Belinda Musgrave;

   (e) failure to present alibi witness; and

   (f) failure to ask for different instructions to the jury following the reading of the wrong indictment.

(5) Ineffective assistance of appellate counsel due to failure to cite any supporting authorities in appeals brief in violation of court rules.

## II.  Standard of Review

**A.  Summary Judgment**

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Material facts are facts that may "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986). Once the movant has met this burden, the non-movant must establish that there is a genuine issue for trial. See Anderson, 106 S.Ct. at 2511. If the non-movant is unable to meet this burden, the motion for summary judgment will be granted. FED. R. CIV. P. 56(c).

**B.   Presumptions Applied in Habeas Cases**

When considering a summary judgment motion the court usually resolves any doubts and draws any inferences in favor of the nonmoving party. Anderson, 106 S.Ct. at 2513. However, the amendments to 28 U.S.C. § 2254 contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") change the way in which courts consider summary judgment in habeas cases.

In a habeas proceeding, 28 U.S.C. § 2254(e)(1) mandates that findings of fact made by a state court are "presumed to be

correct."  This statute overrides the ordinary summary judgment rule.  <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002) *(*overruled on other grounds by <u>Tennard v. Dretke</u>, 124 S.Ct. 2562, 2565 (2004)).  Similarly, a presumption of correctness applies to "those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."  <u>Williams v. Quarterman</u>*,* 551 F.3d 352, 358 (5th Cir. 2008) (quoting <u>Valdez v. Cockrell</u>, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).  Therefore, a court will accept any findings made by the state court as correct unless the habeas petitioner can rebut the presumption of correctness by clear and convincing evidence.  <u>Smith</u>*,* 311 F.3d at 668.

The provisions of section 2254(d) set forth "a highly deferential standard for evaluating state-court rulings."  <u>Lindh v. Murphy</u>, 117 S.Ct. 2059, 2066 n.7 (1997).  A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

-6-

or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1519-20 (2000).  A decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u> at 1523.

### III.  <u>Analysis</u>

**A.   Wrong Count of Indictment Read**

As his first ground for relief, Miller argues that he was denied a fair trial when the prosecutor read a portion of the wrong count of the indictment to the jury, and the judge did not subsequently grant a mistrial.[9]  Miller argues that the reading of

---

[9]Miller was initially charged with both causing injury to Belinda Musgrave by grabbing her and hitting her with a ring, and with threatening her with imminent bodily injury. CR 19 (Clerk's Record).  Miller was tried only on the threatening count. III RR 8.  The prosecutor, reading the indictment at the opening of the trial, read the following before realizing his mistake:

> In the name and by the authority of the State of Texas, the duly organized Grand Jury of Fort Bend County, Texas presents in the District court of Fort Bend County, Texas that in Fort Bend County, Texas, Gary Lloyd Miller, hereafter styled the defendant, heretofore, on or about December 14th, 2004, did then and there intentionally,  knowingly and recklessly cause bodily injury to Belinda Musgrave- pardon me, cause- threaten-

III RR 10.  After a conference without the jury present, the judge instructed the jury, "Ladies and gentlemen of the jury, the prosecutor misspoke when he was presenting the indictment to you. The words he spoke a while ago are not part of the indictment.  He is now going to read the indictment and read it properly."

(continued...)

the wrong part of the indictment informed the jury that he was charged with more than one count and so denied him a fair trial.[10] Miller argues that this error was incurable or that, in the alternative, the judge's instructions were not sufficient to cure, as they did not explicitly tell the jury to "disregard" the erroneous language.[11]

Miller raised this issue on direct appeal.[12] The state appeals court analyzed Texas precedent and determined that under Texas law a trial judge's instructions to the jury can cure error caused by a reference to an extraneous indictment.[13]

The Fifth Circuit has often recognized that an instruction from the judge can cure an inappropriate comment from a prosecutor. Hughes v. Quarterman, 530 F.3d 336, 347 (5th Cir. 2008); Gonzales v. Quarterman, 458 F.3d 384, 397 (5th Cir. 2006); United States v.

---

[9](...continued)
After the prosecutor read the correct indictment and Miller pleaded not guilty, the judge further instructed the jury, saying, "Ladies and gentlemen, you are instructed that the indictment that was just read to you is the proper indictment presented against this defendant and that you are to disregard anything that was said prior to that by the prosecutor." III RR 17.

[10]Docket Entry No. 1, p. 7.

[11]Petitioner's Opposition to Respondent's Motion for Summary Judgment, Docket Entry No. 31, p. 10.

[12]Miller v. Texas, No. 14-06-00224-CR, 2007 WL 925718, at *3.

[13]Id.

Gamez-Gonzalez, 319 F.3d 695, 701 (5th Cir. 2003). An improper comment by the prosecution only rises to a constitutional level if the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986). A comment only creates such unfairness if it is part of "persistent or pronounced misconduct," or the evidence is so weak that without the comment, the conviction would probably not have occurred. Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002).

Miller does not demonstrate that the appeals court's decision was contrary to, or an unreasonable application of, clearly established Federal law, or against Supreme Court precedent.[14] The mistake Miller complains of was the only time when the prosecution made any such error, and it was not part of a persistent or intentional scheme of misconduct. Furthermore, Miller was convicted based on considerable testimonial evidence from multiple witnesses. Giving the state court's decision its proper deference, we accept as correct its determination that Miller's complaint is without merit.

---

[14]Miller's citations to cases in which the prosecution knowingly used perjured testimony are not apposite for this situation. Petitioner's Opposition to Respondent's Motion for Summary Judgment, Docket Entry No. 31, p. 8. His argument that the judge's instructions failed to undo the damage to him was specifically rejected by the appeals court. Miller v. Texas, No. 14-06-00224-CR, 2007 WL 925718, at *3 (Tex. App. -- Houston [14th Dist.] March 29, 2007, pet. dism'd). Moreover, a short time after the main instructions were issued, the judge used the word that Miller holds to be so crucial when he reminded the jury "that you are to disregard" the incorrect indictment. III RR p. 17.

**B.      Legal Sufficiency**

As his second ground for relief, Miller argues that the evidence supporting his conviction does not satisfy the elements of the crime because his threats to Musgrave did not place her in fear of imminent bodily harm since they were conditional and vague.[15] Because Miller challenges the state's ability to prove an element of the crime charged based on the evidence presented, this court interprets this claim to be a legal sufficiency challenge.[16]

---

[15]Under the same heading Miller also claims the evidence is insufficient because it was not corroborated by an eyewitness. This eyewitness claim was not raised in state court, and is therefore barred. See III, Part C below. Even if it had been raised, because it is a factual sufficiency argument, it would not be cognizable in a federal habeas. See note 16 below.

[16]Respondent urges us to not consider the merits of Miller's claim that the evidence is insufficient to support his conviction for assault by threat. Docket Entry No. 20, pp. 10-11. Respondent argues that Miller is either making a claim of factual sufficiency, which is not cognizable in federal court, or that because this claim was not brought on direct appeal, it is barred from any habeas consideration. West v. Johnson, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996) (sufficiency arguments cannot be raised on state habeas in Texas).

Miller did not label his claim either "legal" or "factual" in his federal habeas petition. Docket Entry No. 1, p. 7. However, it is apparent that the claim Miller is attempting to make is based on legal sufficiency. Miller argues that because Musgrave was not actually frightened and because his threat was conditional, the elements of the crime of aggravated assault are not met and could not be legitimately found beyond a reasonable doubt. This claim is precisely what the standard established in the Jackson v. Virginia tests. Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).

While factual sufficiency is only an issue of state law in Texas, legal sufficiency is a due process issue and is cognizable on federal habeas. See Woods v. Cockrell, 307 F.3d 353, 358 (5th Cir. 2002).

(continued...)

In evaluating a petitioner's challenge to the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). In order to make this determination, all issues of credibility must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

Under Texas law aggravated assault is committed if a person intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon while committing the assault. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon 2006). Viewing the testimony in the light most favorable to the verdict, Musgrave's testimony established that Miller threatened her with a deadly weapon such that she feared imminent death or bodily injury by telling her he would shoot her if he thought she was part of the conspiracy against him while pointing a handgun at

---

[16](...continued)
Miller argues vigorously that he did present the issue on direct appeal, in the brief submitted by his retained attorney, and that barring the claim would effectively deny him the right to counsel of his choice. Docket Entry No. 31, pp. 4-6. The court need not determine if respondent is correct that a procedural bar prevents our consideration of this issue. A federal court can look past the question of a procedural default if the claim can be more easily resolved on the merits. Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004).

her face.[17]  Miller argues that his threat was conditional and, therefore, could not have been imminent.[18]  Texas courts analyze a "conditional" threat by determining whether the action threatened was imminent, not if the wording of the threat was conditional. See Tidwell v. State, 187 S.W.3d 771, 774-75 (Tex. App. -- Texarkana 2006, no pet.) (holding a gun and saying that if an officer doesn't leave the property you will shoot constituted threat of imminent bodily injury, without pointing the gun); Devine v. State, 786 S.W.2d 268, 270-71 (Tex. Crim. App. 1989) (not having a gun at the time of the threatened violence meant threat was not imminent).

The real issues are, therefore, whether the victim feared injury or death and whether the threatening party had the means to carry out the threat immediately, not if the threat itself was stated as a future possibility.  See Pitte v. Texas, 102 S.W.3d 786, 792 (Tex. App. -- Texarkana 2003, no pet.).  In Texas a handgun is a deadly weapon per se.  Williams v. Texas, 567 S.W.2d 507, 509 (Tex. Crim. App. 1978).  Pointing a gun at a person at close range is enough to overcome any issues of immediacy.  See Edwards v. Texas, 57 S.W.3d 677, 680 (Tex. App. -- Beaumont 2001, pet. ref'd.).  The mere presence of a deadly weapon, under proper circumstances, can be enough to instill fear and threaten a person

---

[17] III RR 34-35.

[18] Docket Entry No. 1, p. 7.

with bodily injury.  DeLeon v. Texas, 865 S.W.2d 139, 142 (Tex. App. -- Corpus Christi 1993, no pet.).

Based on Texas case law it is apparent that Miller's threat to Musgrave, issued while pointing a loaded gun at her head at close range, was sufficient to establish an imminent threat of bodily harm under Texas law if it caused Musgrave to fear such imminent harm.

Miller argues that Musgrave was not in fear of imminent bodily injury because she testified that she was not sure if Miller would shoot her, at least at that moment.[19]  However, Musgrave also specifically testified that she was scared, that she believed Miller was ready to carry out his threats, and that he had previously made comments that indicated he did believe she was a part of the conspiracy to harm him.[20]  Moreover, on cross-examination she specifically denied that she had not feared imminent bodily harm.[21]  Viewing this testimony in the light most favorable to the verdict, a rational jury could have found all the elements of the crime to be proved beyond a reasonable doubt.

**C.   Unexhausted Claims**

Under the AEDPA a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief."  Sones

---

[19]III RR 49.

[20]III RR 31, 36.

[21]III RR 49.

v. Hargett, 61 F.3d 410, 414 (5th Cir. 1995). To exhaust a claim under the AEDPA a petitioner must have presented the habeas claim fairly to the state's highest court before he may bring it to federal court. Fisher v. Texas, 169 F.3d 295, 302 (5th Cir. 1999).

Texas prohibits successive writs challenging the same conviction except in narrow circumstances. TEX. CODE CRIM. PROC. ANN. 11.07 § 4(a) (Vernon 2005). The Texas Court of Criminal Appeals will not consider the merits of a subsequent habeas application unless the application contains sufficient specific facts establishing that:

> (1) the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

Id.

Miller failed to bring his claims relating to ineffective assistance of trial and appellate counsel in his first state habeas petition, and the Court of Criminal Appeals has already ruled that his attempt to bring them in a subsequent state habeas claim was an abuse of writ.[22] Miller has not demonstrated that the factual or legal basis for his ineffective assistance of counsel claims was

---

[22]Ex parte Miller, WR-70,568-02, at inside cover.

unavailable, or that he could not have been convicted beyond a reasonable doubt but for his counsel's alleged ineffectiveness. Because these claims are not exhausted and do not fit within the exceptions to the successive writ statute, they would be procedurally barred from being considered in state court. Coleman v. Thompson, 111 S.Ct. 2546, 2557 n.1 (1991).

This procedural bar precludes this court from reviewing petitioner's claims absent a showing of cause for the default and actual prejudice attributable to the default, or a showing that failure to consider such claims will result in a fundamental miscarriage of justice. Id. at 2565. To show a miscarriage of justice a petitioner would have to demonstrate that a constitutional violation probably resulted in the conviction of one who is actually innocent of the crime. See Rodriquez v. Johnson, 104 F.3d 694, 697 (5th Cir. 1997).

Miller fails to demonstrate that there was cause for the default of his ineffective assistance of counsel claims in his first state habeas petition. Miller also does not claim actual innocence. As such, this court will not consider Miller's claims that he was denied effective assistance of counsel at trial and on appeal.

## IV. Certificate of Appealability

Although Miller has not yet requested a Certificate of Appealability ("COA"), the court may deny a COA sua sponte.

Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam). To obtain a COA for claims denied on the merits Miller must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 124 S.Ct. 2562, 2569 (2004). To make such a showing Miller must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further. Tennard, 124 S.Ct. at 2569. When the court denies relief based on procedural grounds and does not reach the petitioner's underlying constitutional claim, the petitioner must show that "jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right," and that they "would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S.Ct. 1595, 1604 (2000). For the reasons stated in this Memorandum Opinion and Order, Miller has not made a substantial showing of a denial of a constitutional right, nor has he shown that a jurist of reason would debate whether the procedural rulings in this case are correct. Accordingly, a Certificate of Appealability will not issue in this case.

## V. Conclusion

For the reasons explained above, the court concludes that Miller's constitutional rights were not violated in the course of

his conviction. The evidence was legally sufficient for a jury to convict him of aggravated assault, and any error caused by the prosecutor's reading of the wrong part of the indictment was cured by the judge's instructions. Miller's remaining claims are procedurally barred. Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 20) is therefore **GRANTED**, and Miller's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

    **SIGNED** at Houston, Texas, on this 13th day of August, 2009.

_____<br>
SIM LAKE<br>
UNITED STATES DISTRICT JUDGE